CRAIG P. FAGAN, State Bar No. 149556
**LAW OFFICES OF CRAIG P. FAGAN**
6320 Raydel Court
San Diego, CA 92120
Telephone: (619) 528-9600
Facsimile:  (619) 528-9675
email: cpfagan@faganlegal.com

Attorneys for all Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| RACHEL MONTANEZ, an individual, C.R., a minor by and through her general guardian, RACHEL MONTANEZ;  J.R., a minor by and through her general guardian, RACHEL MONTANEZ; A.R., a minor by and through his general guardian, RACHEL MONTANEZ, <br><br>       Plaintiffs, <br><br> v. <br><br> WOODSIDE VILLAGE APARTMENTS, L.P., A California Limited Partnership; SATELLITE PROPERTY MANAGEMENT COMPANY, INC., A California Corporation, and DOES 1 through 10, Inclusive, <br><br>       Defendants | No. <br><br> **COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF; DEMAND FOR TRIAL BY JURY** <br> _____ |

# I.

## INTRODUCTION

1.     This action seeks monetary, declaratory, and injunctive relief against defendants for discriminating against families with children in the operation of the Woodside Village Apartments located at 2547 Temple Avenue, West Covina, CA, 91792 (hereinafter "the Subject Property" or "the complex") for coercing, intimidating, threatening, or interfering with plaintiffs in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act and/or the Fair Employment and Housing Act in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. §§3601 *et seq.*, and related federal and state laws

# II.

## JURISDICTION AND VENUE

2.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331 in that the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts.  Plaintiffs' state law claims are related to Plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in that the claims alleged herein arose within the City of West Covina, County of Los Angeles, CA.

* * *

* * *

**III.**

**PARTIES**

4.      Plaintiff Rachel Montanez lives with her minor children, Plaintiffs C.R., J.R. and A.R., in West Covina, Los Angeles County, CA.  Plaintiff Rachel Montanez is the general guardian for minor plaintiffs C.R., J.R., and A.R.

5.      Defendant Woodside Village Apartments, L.P., a California Corporation (hereinafter WVA), is the owner of the Subject Property, and has its principal place of business in Santa Ana, Orange County, CA.   The Subject Property is managed by Defendant  Satellite Property Management Company, Inc. (hereinafter "SPMC"), who has its principal place of business in Santa Ana, Orange County, California.

6.      At all times relevant, WVA has employed SPMC to manage the Subject Property. During that time, SPMC has hired resident managers to live onsite and manage the Subject Property. Currently, SPMC employs Kelly B. to act as the resident manager at the complex.  Kelly B. has have acted in such capacity at all times since Plaintiffs have lived at the Subject Property.  Kelly B. is, and at all times herein relevant was, the agent, employee, or representative of defendants; in doing the acts or in omitting to act as alleged in this complaint, was acting within the course and scope of his/her actual or apparent authority pursuant to such agency or employment; or the alleged acts or omissions of the resident manager as agent or employee was subsequently ratified and adopted by defendants as principals.

7.      Each defendant is, and at all times herein relevant was, the agent, employee, or representative of each other defendant, in doing the acts or in omitting to act as alleged in this compliant, was acting within the course and scope of his or her actual or apparent authority pursuant to such agency; or the alleged acts or omissions of each defendant as agent were subsequently ratified and adopted by each defendant as principal.

**IV.**

**FACTS**

8.     Defendants, acting individually and in concert with others, directly and through agents, have engaged in a pattern or practice of discrimination against families with children, including Plaintiffs, on account of familial status in the operation of the Subject Property.  Defendants continue to engage in such a pattern or practice of discrimination so as to constitute a continuing violation.

9.     In August 2007, Plaintiff Rachel Montanez entered into a rental agreement with Defendant WVU to lease an apartment at the Subject Property, along with her minor children, plaintiffs C.R., J.R., and A.R.  Plaintiffs moved into the complex at that time.  The Subject Property has been owned by Defendant WVU and managed by SPMC at all times since Plaintiffs moved into the Subject Property in 2007.

10.     At the time that Plaintiffs moved into the complex, Kelly B. was the resident manager at the complex, and has been employed in such capacity by SPMC at all times since.

11.     During the time that Kelly B has been the resident manager, she has consistently harassed Ms. Montanez about her children playing outside in the common areas at the complex.

12.     On one occasion in or about 2012, Ms. Montanez was in her unit, looking out the kitchen window, as her son, A.R., was playing just outside the door with some other neighborhood kids.  The mother of the children who were playing with A.R. was outside with the kids, watching them play.  A.R.  had left his small toddler scooter on the walkway as he played. Upon seeing this, Kelly B. walked up and took A.R.'s scooter.  Upon seeing this, Ms. Montanez came out.  Kelly B. informed her that A.R. could not ride the toddler scooter, and informed Ms. Montanez that she was confiscating the scooter. When Ms. Montanez objected, Kelly B. informed her that the lease prohibited A.R. from riding scooters,

and that the lease authorized her to take the scooter and discard it.

13.     For the last five years, Kelly B. has consistently yelled at kids to stop riding bikes and scooters, even though it's safe to do so.  Kelly B. tries to intimidate kids when she speaks with them, so that they will stop playing.  During this same time period, Kelly B. has consistently informed Plaintiff's children, as well as other children at the complex, that playing outside was not allowed.  On one occasion, a staff member of Kelly B.'s told a child directly that his family would be evicted if he didn't stop bouncing a basketball.

14.     There is a tether ball pole in the common area, but no ball.  On or about January 1, 2014, Ms. Montanez purchased a tether ball and affixed it to the poll, so that the kids could play.  Upon see this, security personnel at the complex informed Ms. Montanez that the children could not play tether ball as they might get hurt.  The security personnel is employed by Defendant Woodside Village Apartments, L.P.

15.     There is a patch of grass in the common area, a good place for children to play. Unfortunately, Defendants have repeatedly instructed Plaintiff's children and other children over the last several years that playing in this area is not allowed even when the children have been supervised.  The children typically try to play soccer, but Defendants' security personnel have repeatedly stopped the children from playing, informing them that they are too noisy, that they might hit a unit with a ball, or that someone might get hurt. The demands are patently unreasonable as the children are endangering nobody, are not unreasonably loud, and are not posing a risk to anybody by playing.

16.     There is also a large strip of concrete in the common area, a place that used to be a playground.  The playground was removed, but the space is still a good place for children to play. Defendants do not allow it.  Whenever Plaintiff's children or other children from the complex try to play on this concrete strip, they are constantly told not to play there because someone might get hurt or because

1  of noise complaints.  The demand is patently unreasonable as there is no risk to children being harmed
2  while playing in this area, and they aren't making unreasonable amounts of noise while playing.  Rather
3  Defendants simply use these unreasonable excuse to prevent children from playing.  On one occasion, Ms.
4  Montanez asked Kelly B. where the children could play.  Kelly B. instructed her to take the kids to play
5  in the streets or to the park.

6

7  17.  Near Ms. Montanez's unit are two strips of grass, a good place for children to play.
8  Unfortunately, Defendants have repeatedly informed Plaintiff's children over the last several years, as well
9  as other children at the complex, that playing is not allowed in this area.  This has happened multiple times
10  over the last few years.

11

12  18.  On or about July 1, 2015, Plaintiff's children were riding a skateboard board on the
13  sidewalk, hopping off the curb into Plaintiff's parking spot.  It was perfectly safe to do so.  Upon seeing
14  this, a member of the security personnel threatened to take Plaintiff's son's skateboard.  He said, "I thought
15  I told you guys to stop playing on those damn boards.  If I see that shit again, I'm going to take them and
16  break them in half."  Upon hearing this, Ms. Montanez came out of her unit to speak to the security guard.
17  They ended up arguing. Ms. Montanez told the security guard that he could not confiscate the skateboard.
18  The security guard responded by saying, "Watch me."  Ms. Montanez then threatened to call the police.
19  He told her to "kiss off," then walked away.

20

21  19.  On or about February 1, 2015, several teenage kids were playing catch with a
22  football on one of the lawns at the complex behind Plaintiff's unit.  Plaintiffs C.R. (14 years old) and A.R.
23  (9 years old) were outside, as well, tossing the football with the kids. Upon seeing this, Kelly B. took the
24  football from the children.  She then went to Ms. Montanez's door and informed her that she took the
25  football from the children.  She informed Ms. Montanez that the children were "not supposed to be playing
26  outside."  Kelly B. then informed Ms. Montanez that if it happened again, then she and her family would
27  be evicted.

28

20.     In or about July 2016, some kids were accused of playing with matches at the complex.  Kelly B. came to Plaintiff's unit and claimed that Plaintiff's kids were part of the group of kids that had played with matches.  To this end, Kelly B. said to Ms. Montanez, "From now on, you must be outside with your kids anytime they are outside.  If they go to the laundry room, to the store, or anywhere outside, they must be supervised."  Plaintiff's father lives with her and her kids, and babysits the kids when they are at work.  With this in mind, Kelly B. also said to Plaintiff, "Tell your dad to put on his walking shoes."

21.     On or about September 1, 2016, Ms. Montanez drove her godson home from school.  She brought three additional kids with her.  When they got to the complex, Ms. Montanez went to the office to submit a maintenance request.  While she was in the office, the kids waited on the stairs for Ms. Montanez to come back.  Several minutes later, Kelly B. came to Ms. Montanez's unit and informed her that the children were not allowed to loiter.   Kelly B. then informed Ms. Montanez that if the kids came back to the complex, that Ms. Montanez would be evicted.   Ms. Montanez then instructed the children to sit on the stairs right in front of her unit, but Kelly B. insisted that it was not allowed.  Kelly B. became very insistent that the children could not loiter.  Frustrated, Ms. Montanez said, "This is the USA and I have rights.  It's not a concentration camp.   My kids will be out playing and I'll be with them."  Upon hearing this, Kelly B. said, "Try it and watch what happens."  Ms. Montanez then informed Kelly B. that her air conditioner in her unit was not working, so that the kids would, therefore, be outside playing.  Ms. Montanez then went back inside. Her father was standing at the door when Ms. Montanez went back inside.  Kelly B. then stated to Ms. Montanez's father that she (Kelly B.) was not there to make friends, but that she was there to make rules.  She then stated that she was going to start handing out move-out notices.

22.     On or about September 7, 2016, Defendants posted signs at the complex, which states, "No Skateboarding, Bicycle Riding, Scooter Riding, Rollerblading, Ball Playing."  The signs were posted conspicuously close to Plaintiffs unit, after repeated warnings by Defendants for her kids not to

play.

## V.

### INJURIES

23.     By reason of defendants' unlawful acts and practices, plaintiffs have suffered loss of important housing opportunities, violation of their civil rights, deprivation of the full use and enjoyment of their tenancy, and emotional distress and physical injury, humiliation and mental anguish, physical distress, impairment of health, fear, stress,  including bodily injury such as stomach aches; knots in stomach; head aches; sleep loss; feelings of depression, discouragement, dry throat, rise in body temperature, anger, and nervousness; trouble sleeping; and reliving the experience; and other special and general damages according to proof.  Accordingly, plaintiffs are entitled to compensatory damages.

24.     In doing the acts of which plaintiffs complain, defendants and their agents and employees intentionally or recklessly violated plaintiffs' civil rights.  Accordingly, all plaintiffs are entitled to punitive damages.

25.     There now exists an actual controversy between the parties regarding defendants' duties under the federal and state fair housing laws.  Accordingly, all plaintiffs are entitled to declaratory relief.

26.     Unless enjoined, defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described above.

* * *

* * *

* * *

**VI.**

**FIRST CLAIM**

**(Fair Housing Act)**

27.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 26 of the complaint herein.

28.     Defendants have injured plaintiffs in violation of the federal Fair Housing Act by committing the following discriminatory housing practices:

A.     Discriminating in the terms, conditions, and privileges of the rental of a dwelling because of familial status, including without limitation forbidding children to play at any time in the complex, or in the provision of services or facilities in connection therewith, because of familial status in violation of 42 U.S.C. §3604(b);

B.     Making, printing, or publishing notices, statements, or advertisements, with respect to the rental of a dwelling that indicates a preference, limitation, or discrimination based on familial status or disability, or an intention to make any such preference, limitation, or discrimination in violation of 42 U.S.C. §3604(c);

C.     Coercing, intimidating, threatening, or interfering with persons in their exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged any other person in the exercise or enjoyment of, any right granted by or protected by the Fair Housing Act in violation of 42 U.S.C. §3617.

**SECOND CLAIM**

**(California Fair Employment and Housing Act)**

29.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 28 of the complaint herein.

30.     Defendants have injured plaintiffs in violation of the California Fair Employment and Housing Act by committing the following discriminatory housing practices:

A.     Discriminating in the terms, conditions, and privileges of the rental of a dwelling because of familial status in violation of California Government Code §§12955(a);

B.     Making, printing, or publishing notices, statements, or advertisements, with respect to the rental of a dwelling that indicates a preference, limitation, or discrimination based on familial status or disability, or an intention to make any such preference, limitation, or discrimination in violation of California Government Code §12955(c);

C.     Expressing a preference for or limitation on a renter because of familial status in violation of California Government Code §12955(d);

D.     Harassing, evicting, or otherwise discriminating against any person in the rental of housing accommodations where the dominant purpose is retaliation against a person who, among other things, has opposed practices unlawful under the Fair Employment and Housing Act, in violation of California Government Code §12955(f);

E.     Otherwise making unavailable or denying a dwelling based on discrimination because of familial status, in violation of California Government Code §12955(k); and

F.     Threatening, intimidating, or interfering with persons in their enjoyment of a dwelling because of familial status in violation of California Government Code §12955.7.

**THIRD CLAIM**

**(Negligence)**

31.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 30 of the complaint herein.

32.     Defendants owed plaintiffs a duty to operate the Subject Property in a manner that was free from unlawful discrimination, and to hire, train, supervise, and discipline their employees and

themselves to fulfill that duty.  Defendants negligently violated that duty by discriminating against families with children on account of their familial status.  Defendants' violation of that duty was the result of negligence, including, but not limited to:

     A.     Defendants' negligent failure to hire persons who were familiar with the requirements of state and federal fair housing laws;

     B.     Defendants' negligent failure to train their employees and themselves regarding the requirements of state and federal fair housing laws;

     C.     Defendants' negligent failure to supervise their employees regarding compliance with the requirements of state and federal fair housing laws; and

     D.     Defendants' negligent failure to follow standard, recognized rental practices of the community;

     E.     Defendants' negligent failure to exercise the ordinary and reasonable care and diligence required of a housing provider in the operation and management of the subject rental premises; and/or

     F.     Defendants' negligent failure to discipline or terminate employees who failed to comply with the requirements of state and federal fair housing rights laws.

33.     As a legal result of defendants' negligent conduct, the plaintiffs have suffered loss of an important housing opportunity, violation of their civil rights, deprivation of the full use and enjoyment of their tenancy, invasion of the private right of occupancy, wrongful eviction, and bodily injury, including severe humiliation, physical and emotional distress.

## FOURTH CLAIM

### (Unfair Business Practices)

34.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 33 of the complaint herein.

35.     In acting as herein alleged, defendants have engaged in a pattern or practice of unlawful discrimination in the operation of the Subject Property, a business establishment, and therefore have engaged in acts of unfair competition as the same is defined in California Business & Professions Code §17200 *et seq.*.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for entry of judgment against defendants that:

1.     Awards compensatory and punitive damages according to proof;

2.     Declares that defendants have violated the provisions of the applicable federal and state fair housing laws;

3.     Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants regardless of familial status;

4.     Awards statutory damages to plaintiffs pursuant to the Unruh Civil Rights Act;

5.     Awards pre-judgment interest and post-judgment interest as provided for by law;

6.     Awards costs of suit herein incurred, including reasonable attorneys' fees; and

7.     Awards all such other and further relief as the Court may deem proper.

Dated: September 27, 2016                    LAW OFFICES OF CRAIG P. FAGAN

                                             By: **/s/Craig P. Fagan**
                                             Craig P. Fagan
                                             Attorneys for all Plaintiffs

**VIII.**

**<u>JURY DEMAND</u>**

      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby request a trial by jury.

Dated: September 27, 2016                    LAW OFFICES OF CRAIG P. FAGAN

                                             By: **/s/Craig P. Fagan**
                                             Craig P. Fagan
                                             Attorneys for all Plaintiffs